IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. |
| | ) | 11-00152-CB |
| VICTOR HUGO SERMENO, | ) | CIVIL NO. |
| | ) | 14-00391-CB |
| Petitioner/Defendant | ) | |

**ORDER**

This matter is before the Court on a motion to vacate, set aside, or correct sentence filed pursuant to 28 U.S.C. § 2255 by petitioner Victor Hugo Sermeno, a person in federal custody, along with supporting brief. (Docs. 488 & 490.) The government has filed a response in opposition (Doc. 496), and Petitioner has filed a reply (Doc. 506). For reasons set forth below, the Court finds the motion is due to be denied without an evidentiary hearing.[1]

**Factual & Procedural Background**

In May 2011, Petitioner Victor Hugo Sermeno was charged, along with nine other defendants, in a one-count indictment with conspiracy to possess with intent to distribute more than 5 kilograms of cocaine. Attorney Robert Ratliff was appointed to represent Petitioner, but he was subsequently replaced by retained counsel, Richard Williams. A jury was selected on August 1, 2011 for the trial of Petitioner and codefendant David Trotter scheduled to begin August 9, 2011. On the

---

[1] "[A] district court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous." *Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002).

morning of trial, both defendants entered guilty pleas before Judge DuBose, who had been scheduled to conduct the trial.[2]

Prior his plea, Sermeno entered into a written plea agreement with the government. (Doc. 139.) The plea agreement explained the constitutional rights waived by the guilty plea (e.g., a trial by jury, to confront and cross examine witnesses, not to testify, etc.) as well as the minimum and maximum penalties that could be imposed. By signing the plea agreement, Petitioner represented that the plea was "freely and voluntarily made and [wa]s not the result of force, threats, promises, or representations, apart from those representations set forth in th[e] Plea Agreement." (Plea Agrmt. ¶ 9.) Furthermore, The plea agreement contained a limited appeal waiver whereby Petitioner "knowingly and voluntarily waive[d] the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside , or correct sentence under 28 U.S.C. § 2255" with the following exceptions: "any sentence in excess of the statutory maximum" and "any sentence which constitutes an upward departure or variance from the advisory guideline range." (*Id.* ¶ 21.)

The plea agreement also incorporated by reference a separate document entitled Factual Resume, which set out the conduct underlying the offense. The final paragraph of that document, also signed by the Defendant, states as follows: "The parties agree that more than 5 kilograms of cocaine was involved in the conspiracy, but the parties do not agree on the amount of cocaine for which the defendant is accountable as relevant conduct. If the parties do not agree by the time of the

---

[2] Pursuant to district policy, the case was referred back to the assigned judge for sentencing.

sentencing hearing, the parties have agreed to allow the district court to make that determination at the sentencing hearing." (Factual Resume 17, Doc. 139.)

Immediately prior to the guilty plea, a lengthy discussion took place at side bar as to how the drug quantity ultimately would be determined, whether Sermeno pled guilty or went to trial.

> THE COURT: All right. Mr. Sermeno, before the jury gets here, have you talked with your attorney about the possibility of entering a plea? You don't have to tell me anything but yes or no.
> A: I would like to plead but I don't want to plead for hundred and fifty keys.
> MS BEDWELL: I have offered Mr. Knizley [codefendant's attorney], and I thought I had told you that, the opportunity to let the judge decide at sentencing what the drug amount was. The only agreement that we'll require is that the conspiracy involved more than five kilos. But otherwise . . . .
> THE DEFENDANT: I can plead to five kilos
> MR. WILLIAMS: Not saying five keys.
> [THE COURT[3]]: No, not saying 5 kilos. That is what they are saying you would plead to but the Judge would have the discretion to determine how much drugs were involved. So what would happen at the sentencing hearing Ms. Bedwell would put on some evidence establishing what she thinks. And then your attorney would be able to question all of that. And instead of a jury deciding, a judge would decide how much is involved.
> What would happen if you go to trial is, if the jury finds you guilty today, they are only going to be finding you guilty as to the five kilos anyway. And then a judge is ultimately going to decide the other amount anyway. Is that right?
> MS. BEDWELL: That's right
> THE COURT: Okay. So what they have charged you with is more than five kilos. If the jury comes back they may find less or may find five kilos. Anything above that a Judge would have to decide that anyway. But it's up to you, you certainly have a right to have the whole case heard to a jury.
> MR. WILLIAMS: I think you ought to plead.
> THE DEFENDANT: I want to plead but –
> THE COURT: I can't help. We don't know what the evidence is going to be.

---

[3] The transcript attributes this passage to Ms. Bedwell, but it is clear from the context that Judge DuBose is the speaker.

3

>   MR. WILLIAMS:  It would be my job to –
>   THE DEFENDANT:  Right
>   THE COURT:  You would have a mini trial in front of a judge, no jury to decide how much drugs are involved.  It's going to be over five kilos, you understand that?
>   THE DEFENDANT:  Yes, ma'am.
>   THE COURT:  Is that what you want to do?
>   THE DEFENDANT:  Yes, Your Honor.
>   THE COURT:  You don't have to, you understand that?
>   MR. WILLIAMS:  I think you should plead.  I think we are ready let's do it.
>   THE DEFENDANT:  Thank you Your Honor.  Thank you.

(Guilty Plea Tr. 2-4, Doc. 350.)

Following this discussion, Judge DuBose conducted a plea colloquy in open court.  Sermeno indicated that he had had sufficient time to discuss the decision with his attorney and that counsel had discussed the plea agreement with him.  The judge explained the effect of the plea agreement, including the appeal waiver.  (*Id.* 7-8.)  She specifically pointed out that "the plea agreement provides that you agree the government could prove up to five kilos" and that "there is this thing call[ed] relevant conduct, where a judge w[i]ll determine the amount past the five kilos." (*Id.* 8.)  The judge also explained the constitutional rights Sermeno would be giving up by entering a guilty plea, as well as the minimum and maximum punishments. (*Id.* 9-12.)

In addition, Ms. Bedwell, the government's attorney, brought up the possibility of deportation.  In response, Sermeno stated: "They can deport me, yeah, that's fine." (*Id.* 9.)  His attorney then interjected that Sermeno was an American citizen, and Sermeno responded:  "I got Puerto Rico papers too, so that's fine." (*Id.* 9-10.)  Ms. Bedwell explained that "there are some questions as to the Defendant's

4

citizenship. The defendant claims to be a U.S. citizen and if that's the case there is no deportation obviously." (*Id.*)

Sermeno's citizenship, as well as his identity, became an issue in the Presentence Investigation Report (PSR). The government filed an objection to the initial PSR's findings regarding acceptance of responsibility and obstruction of justice. The government asserted that Sermeno had given a false identity and lied about his citizenship. After further investigation, the PSR was revised. It concluded that "the defendant provided materially false information to the probation officer regarding his identity [including] false information regarding his family's identity and background, as well as his country of birth." (PSR ¶ 59, Doc. 267.) The Probation Officer reinterviewed Sermeno, in the presence of defense counsel, and "[a]fter much questioning the defendant admitted that he provided false information, and he proceeded to provide accurate information." (*Id.*) Sermeno was born Carlos Arturo Madrid Cordoba in Buenaventura, Colombia. As a result, the PSR assigned a 2-level increase for obstruction of justice and gave no decrease for acceptance of responsibility.

The PSR concluded that Sermeno was accountable for 15 to 50 kilograms of cocaine, resulting in a base offense level of 34. (*Id.* ¶ 63.) In addition to the 2-level increase for obstruction of justice, the PSR included a 2-level increase for possession of a firearm by a codefendant in the conspiracy which was reasonably foreseeable to Sermeno. (*Id.* ¶ 64.) With a total offense level of 38 and a criminal history category III, the guideline range calculated by the PSR was 292 to 365 months.

On the day of the initial sentencing hearing, the defense objected to: (1) the obstruction of justice increase coupled with the lack of a decrease for acceptance of responsibility and (2) the firearms enhancement. In addition, the Court took note of a letter received from Sermeno in which he contended that he pled guilty to five kilograms, as opposed to the 15 to 50 kilograms for which he was held accountable in the PSR. The Court denied the first objection, finding that providing a false name and false citizenship amounted to obstruction of justice. Thus, the Court imposed a 2-level increase and denied any decrease for acceptance of responsibility. The Court questioned counsel with regard to Sermeno's letter and determined that the defense had no evidence to dispute the drug quantity and that Sermeno's position, i.e., that he should be held responsible only for five kilograms, was unsupported. The government requested a continuance of the proceedings so that it could present evidence regarding the firearms enhancement. One week later, on April 30, 2012, the Court resumed the sentencing hearing. At that time, the government presented testimony from codefendant David Trotter that Trotter, Sermeno and a third conspirator carried firearms at various times during the conspiracy to protect Sermeno's drug business. Based on the testimony, the Court found a sufficient basis to support the firearms enhancement and overruled the objection.

After taking into consideration all the § 3553(a), the Court imposed a sentence of 260 months. Sermeno appealed. Mr. Williams was allowed to withdraw, and the Federal Public Defender was appointed to represent Sermeno on appeal. Appellate counsel filed an *Anders* brief and a motion to withdraw. On May 15, 2013, the Eleventh Circuit entered judgment finding no issues of arguable merit

in the record and also granted the motion to withdraw.  Mandate was issued on June 14, 2013.

**Issues Raised**

Petitioner raises three grounds for relief in his motion:

1.  The plea was not knowing and voluntary due to ineffective assistance of counsel.

2.   Due to ineffective assistance of trial and appellate counsel, an acceptance-of-responsibility decrease in the guideline offense level was denied at sentencing and was not challenged on appeal.

3.  Due to ineffective assistance of trial and appellate counsel, an increase in the guideline offense level based on the possession of a firearm was applied at sentencing and was not challenged on appeal.

In response, the government argues that all of these claims "are meritless on their face." (Gov't Br. 4, Doc. 496.)

**Legal Analysis**

**Standard of Review**

Petitioner is entitled to relief only if the Court finds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255.  Habeas relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal."  *United States v. Frady*, 456 U.S. 152, 165 (1982).  A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Id. at 164.  Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited.  *Addonizio v. United States*, 442 U.S. 178, 185 (1979).  Generally speaking,

claims not raised on direct appeal are procedurally defaulted unless a petitioner can "show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004). However, procedural default does not apply to ineffective assistance of counsel claims, which need not be raised on direct appeal. *Massaro v. United* States 538 U.S. 500, 508-09 (2003).

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* A claim for relief based on ineffective assistance of counsel requires proof of two elements:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687.

**Knowing and Voluntary Guilty Plea**

"The circumstances under which a guilty plea may be attacked on collateral review" are "strictly limited." *Bousley v. United States*, 523 U.S. 614, 621 (1998). An ineffective assistance of counsel claim is one method for clearing this procedural hurdle. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To be successful, Petitioner must establish: "(1) that counsel's performance was deficient <u>and</u> (2) that the deficient

performance prejudiced the outcome of the case." *Duhart v. United States*, 556 Fed.Appx. 897, 898 (11th Cir. 2014) (per curiam). Petitioner's motion fails on both prongs. He has made no effort to explain how counsel was deficient, nor can he demonstrate prejudice.

Petitioner insists that his plea was not knowing and voluntary because he "only wanted to plead to 5 kilos." (Reply Br. 2, Doc. 506.) He does not allege that counsel advised him that this was his plea. In fact, the record proves otherwise. Counsel explained, with assistance from the Court, on the record prior to the guilty plea that the final drug quantity would be determined by the judge at sentencing. (Plea Tr. 2-4.) The Court again explained this during the plea colloquy. (Plea Tr. 8.) Furthermore, the Plea Agreement/Factual Resume, which Petitioner signed, stated: "[T]he parties have agreed to allow the district court to make [the drug quantity] determination at the sentencing hearing." (Factual Resume 17, Doc. 139.) While it may be true that the Defendant *wanted* to plead to 5 kilos, he was clearly informed several times that he could be held accountable for more. His claim of ignorance is nothing short of willful blindness.

**Sentencing Issues**

Petitioner's remaining claims arise from alleged sentencing errors. These claims lack merit. First, Petitioner was denied an acceptance-of-responsibility reduction (and given an obstruction-of-justice increase) because Petitioner gave a false name and lied about his citizenship. That action was appropriate under the Sentencing Guidelines. See U.S.S.G. §§ 3C1.1 (obstruction of justice) and 3E1.1, Comm. Note 4 (acceptance of responsibility). Second, Petitioner received a 2-level

9

firearms enhancement because the government presented sufficient proof that Petitioner possessed firearms in connection with the offense. That increase was also appropriate under the sentencing guidelines. *See* U.S.S.G. § 2D1.1(b)(1). Petitioner has raised each of these claims under the ineffective-assistance-of-counsel rubric, but he fails to explain what counsel did—or failed to do—at sentencing or on appeal that was objectively unreasonable. Indeed, counsel raised both of these objections at sentencing, but his lack of success does not equate to constitutionally ineffective assistance. Appellate counsel's failure to raise these issues on appeal does not amount to constitutionally ineffective assistance because "[a]ppellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'" *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000). These issues lacked merit—a fact confirmed by the Eleventh Circuit's judgment on appeal finding "no arguable issues of merit." (Doc. 409.)

**Conclusion**

For the reasons set forth above, the motion to vacate, set aside, or correct sentence is **DENIED**.

**Certificate of Appealability Denied**

Rule 11 of the Rules Governing Section 2255 Proceedings requires that this Court "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." "A certificate of appealability may be issued only where the applicant has made a 'substantial showing of the denial of a constitutional right.'" *Hardwick v. Singletary*, 126 F.3d 1312, 1313 (11th Cir. 1997). This standard is "materially identical" to the standard governing certificates of probable cause

under the former 28 U.S.C. § 2253. *Id.; accord Slack v. McDaniel*, 579 U.S. 473 (2000). In the context of certificates of probable cause, the Supreme Court has defined the requirement of "a substantial showing of the denial of a federal right" to mean that the applicant must raise an issue that is debatable among jurists of reason. *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983). None of the claims raised in petitioner's § 2255 motion meet this threshold. Accordingly, the certificate of appealability is **DENIED**.

**DONE** and **ORDERED** this the 2nd day of March 2015.

s/*Charles R. Butler, Jr.*  
**Senior United States District Judge**